

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00295-CR

Brian Dale **NIXON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 16-04-11937-CR
Honorable Sid L. Harle, Judge Presiding

Opinion by:     Irene Rios, Justice
Concurring Opinion by: Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Adrian A. Spears II, Justice

Delivered and Filed: September 17, 2025

AFFIRMED

Appellant Brian Dale Nixon was convicted by a jury of capital murder. When this case was previously before us, Nixon argued that having his trial in an auxiliary courtroom within the Medina County Jail building violated: (1) the presumption of innocence afforded to an accused; (2) his constitutional right to an impartial jury and due process right to a fair trial; and (3) section

24.012(e) of the Texas Government Code.[1] In his fourth issue, Nixon argued the venire panel did not fairly represent the demographics of Medina County because it was comprised of an underrepresentation of African Americans. We sustained Nixon's first two issues, reversed the trial court's judgment of conviction, and remanded the cause to the trial court for a new trial. *Nixon v. State*, 674 S.W.3d 384, 399 (Tex. App.—San Antonio 2023), *rev'd*, 707 S.W.3d 279 (Tex. Crim. App. 2024). Because we disposed of the appeal on Nixon's first two issues, we did not reach his third and fourth issues. *See id.* at 388; *see also* TEX. R. APP. P. 47.1 (providing opinions should be as brief as practicable and address only those issues necessary to final disposition of the appeal). The State filed a petition for discretionary review. The Texas Court of Criminal Appeals granted the State's petition, reversed our judgment, and remanded the matter back to this court to consider Nixon's remaining issues on appeal. *Nixon v. State* (*Nixon I*), 707 S.W.3d 279, 292 (Tex. Crim. App. 2024). On remand, we affirm the trial court's judgment.

On August 27, 2025, we issued an unpublished opinion disposing of Nixon's remaining issues on appeal. On August 28, 2025, Nixon filed an unopposed motion to publish our opinion issued on August 27, 2025. Because the motion expresses a misunderstanding of our prior opinion, we withdraw our August 27, 2025 memorandum opinion and substitute this memorandum opinion in its place.

## BACKGROUND

Nixon was indicted for capital murder of multiple persons. His trial was held in a courtroom that was housed in the same building as the Medina County jail. A jury convicted

---

[1] Section 24.012(e) of the Texas Government Code provides:

> A district judge may hear a nonjury matter relating to a civil or criminal case at a correctional facility in the county in which the case is filed or prosecuted if a party to the case or the criminal defendant is confined in the correctional facility.

TEX. GOV'T CODE ANN. § 24.012(e).

Nixon of capital murder of multiple persons and he was sentenced to life imprisonment without the possibility of parole. On remand from the Court of Criminal Appeals, we address Nixon's third and fourth issues.

## TEXAS GOVERNMENT CODE § 24.012(e)

In his third issue, Nixon argues the trial court violated section 24.012(e) of the Texas Government Code when it conducted his trial in the building that houses the Medina County jail. Thus, we must determine whether the location of Nixon's trial in the auxiliary courtroom that shares the same roof as the Medina County jail violated section 24.012(e).

"Statutory construction is a question of law, which we review de novo." *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). "When construing statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Id.* (internal quotation marks omitted). "We first look to the statute to determine if its language is plain." *Id.* "We presume that the legislature intended every word to have a purpose, and we should give effect if reasonably possible to each word, phrase, and clause of the statutory language." *Id.* "We read words and phrases in context and construe them according to the rules of grammar and usage." *Id.* (internal quotation marks and alterations omitted). "If the language of the statute is plain, we follow that language unless it leads to absurd results that the legislature could not have possibly intended." *Id.* "When the plain language leads to absurd results, or if the language of the statute is ambiguous, we consult extra-textual factors to discern the legislature's intent." *Id.*

Subsection 24.012(e) of the Texas Government Code states:

> A district judge may hear a nonjury matter relating to a civil or criminal case at a correctional facility in the county in which the case is filed or prosecuted if a party to the case or the criminal defendant is confined in the correctional facility. For purposes of this subsection, "correctional facility" has the meaning assigned by Section 1.07, Penal Code.

TEX. GOV'T CODE ANN. § 24.012(e).

Section 1.07 of the Texas Penal Code defines a correctional facility as:

> [A] place designated by law for the confinement of a person arrested for, charged with, or convicted of a criminal offense. The term includes: (A) a municipal or county jail . . . .

TEX. PENAL CODE ANN. § 1.07(14).

Here, the statute appears to preclude jury trials from occurring inside correctional facilities. However, we need not reach that question because the Court of Criminal Appeals has already determined the auxiliary courtroom where Nixon's trial was held is not a correctional facility. In *Nixon I*, the Court of Criminal Appeals stated:

> [T]he government building at issue here housed more than one government facility. One of those facilities was a jail, another was the Sheriff's Department, and a third was the auxiliary courtroom. All of these distinct facilities were located within the same building and under the same roof.

*Nixon I*, 707 S.W.3d at 287. The *Nixon I* majority then stated: "we are convinced that jurors would likely have concluded that, while the courtroom was located in a building labeled on the outside with the name 'Medina County Jail[,]' the courtroom itself was a separate government facility distinct from the jail." *Id.* at 288 (alteration in the original).

There is no doubt the jail is a correctional facility under subsection 24.012(e). However, the Court of Criminal Appeals definitively stated in *Nixon I* that the jail is a distinct facility from the auxiliary courtroom. *Id.* at 287–88. Under this premise, subsection 24.012(e) would only apply in this case if we conclude the auxiliary courtroom is "a place designated by law for the confinement of a person arrested for, charged with, or convicted of a criminal offense." TEX. PENAL CODE ANN. § 1.07(a)(14). There is no evidence in the record supporting that conclusion. *See Nixon I*, 707 S.W.3d at 289 ("The courtroom does not appear to be within, or even necessarily a part of, the portion of the building dedicated to housing inmates.").

Before the Court of Criminal Appeals issued *Nixon I*, we may have very well concluded the auxiliary courtroom in this case falls within the definition of "correctional facility" under section 1.07 of the penal code, and thus section 24.012(e) of the government code, because it is housed within the same building as the county jail and the building is labeled as the "MEDINA COUNTY JAIL."[2]  However, we cannot ignore the Court of Criminal Appeals' clear statement in *Nixon I* that the "jail" is a "distinct facilit[y]" from the "auxiliary courtroom."  *Id.* at 287.  Therefore, we must conclude that Nixon was not tried in a correctional facility and subsection 24.012(e) does not apply to this case.

Accordingly, Nixon's third issue is overruled.

### Clarification of our Holding

After we issued our initial memorandum opinion on August 27, 2025, Nixon filed an unopposed motion requesting we publish that opinion.[3]  In his motion, Nixon contends the memorandum opinion should be published because it is the only Texas opinion to address "whether a courtroom inside a jail facility constitutes a 'correctional facility' pursuant to [s]ection 24.012(e) of the Texas Government Code and defined by [s]ection 1.07(14) of the Texas Penal Code."  This statement indicates there is a clear misunderstanding of our holding here, the implications of the Court of Criminal Appeals'

---

[2] In his dissent in *Nixon I*, Judge Walker stated the building at issue here "boldly declares to all the world—in big letters on the front of the building right above the door—that it is a 'JAIL'" and is not "a structure in which a courtroom shares the same building where the jail and sheriff's department were located, such that they are all separate facilities." *Nixon v. State* (*Nixon I*), 707 S.W.3d 279, 293 (Tex. Crim. App. 2024) (Walker, J., dissenting).  The *Nixon I* majority even recognized that "the courtroom is housed in a building with a potentially misleading label on the outside . . . ." *Id.* at 289.  If in fact Medina County intends this to be a building housing three separate governmental facilities rather than just a correctional facility, and the State intends to try cases in this auxiliary courtroom, it may be prudent for the county to consider changing the name of the building to dispel any confusion jurors may have when they walk into the building.

[3] This memorandum opinion supersedes the previous memorandum opinion Nixon seeks to have published.  Because we withdraw the previous opinion and supersede it with this opinion, Nixon's motion to publish the prior opinion is moot.

opinion in *Nixon I*, and our role as an intermediate appellate court to follow the binding precedent of higher courts. Contrary to Nixon's assertion in his motion, the Court of Criminal Appeals clearly stated in *Nixon I* that the courtroom at issue in this case is not "inside a jail facility[.]" If it were, there would be no question that Nixon's jury trial was held in a correctional facility and we would have to address whether Nixon's trial violated section 24.012(e) of the Texas Government Code. But our opinion here, and our previous opinion, clearly pointed to express language in *Nixon I* that concluded the auxiliary courtroom and the Medina County Jail are "distinct facilities[.]" Because the auxiliary courtroom is a distinct facility from the Medina County Jail, the jury trial held inside the auxiliary courtroom was not held inside a correctional facility. Thus, section 24.012(e) is inapplicable to this case. We also emphasized that, before the *Nixon I* court's determination that the courtroom and jail are separate and distinct facilities, we may have very well concluded that Nixon's trial was held in a correctional facility. But we are bound by the determination made by the Court of Criminal Appeals that this specific courtroom where Nixon was tried is not part of the jail facility. Based on that determination made by a higher authority, we conclude Nixon was not tried in a correctional facility and we need not even address whether his trial violated section 24.012(e) of the government code. Because the Court of Criminal Appeals' dispositive determination in *Nixon I* only applies to the specific facilities at issue here, and our holding is limited only to the specific facilities at issue here, it is not necessary to publish this opinion because it should not have any precedential value beyond the case at bar.[4]

---

[4] A trial court who must decide whether to try a case in the specific auxiliary courtroom that is the subject of this appeal can easily look to this unpublished opinion's reference to *Nixon I* for any guidance it needs in making its decision.

**UNDERREPRESENTED DEMOGRAPHIC IN THE VENIRE PANEL**

In his fourth issue, Nixon argues an underrepresentation of African Americans on the venire panel violated his constitutional right to have a jury selected from a fair cross section of the community. During voir dire, Nixon complained about the composition of the jury and the trial court held an evidentiary hearing on Nixon's objection. Following the evidentiary hearing, the trial court denied Nixon's motion to dismiss the jury panel.

"In considering the Sixth Amendment right to jury trial, the Supreme Court 'unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community.'" *Ex parte Stepherson*, 693 S.W.3d 364, 381 (Tex. Crim. App. 2024) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 526–27 (1975)). "The unmistakable import of the Supreme Court's opinions is that the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial."[5] *Stepherson*, 693 S.W.3d at 381–82 (alterations omitted) (quoting *Taylor*, 419 U.S. at 528).

To establish a prima facie violation of the fair-cross-section requirement, the defendant must show that (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Stepherson*, 693 S.W.3d at 382 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

---

[5] "But while petit juries must be drawn from a source fairly representative of the community, there is no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Ex parte Stepherson*, 693 S.W.3d 364, 382 (Tex. Crim. App. 2024) (internal quotation marks omitted). "Defendants are not entitled to a jury of any particular composition[,] but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* (alterations omitted).

A criminal defendant has standing to challenge exclusions resulting in a violation of the fair-cross-section requirement even if he is not a member of the excluded class. *Stepherson*, 693 S.W.3d at 382. "Once a prima facie case has been made, the burden shifts to the State to show how any disproportionate exclusion manifestly and primarily advances a significant government interest." *Id.*

Here, the State concedes African Americans are a distinctive group in the community and acknowledges Nixon has met the first prong of the *Duren* test. As to the second prong, a "defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." *Duren*, 439 U.S. at 364. Nixon asserts African Americans make up nine percent of the population in Medina County but only comprised three percent of the venire panel. In his brief, Nixon points us to census data that was introduced during a pretrial evidentiary hearing to support his position. However, the census data negates rather than supports Nixon's argument. Contrary to Nixon's assertion that African Americans make up nine percent of the Medina County population, the census data referred to by Nixon in his brief shows that African Americans only make up three percent of the Medina County population. Here, Nixon concedes in his brief, and the appellate record shows, that three out of the one hundred jurors summoned to appear were African American. Thus, three percent of the jurors on the venire panel were African American. Because the percentage of African Americans in the venire panel is not disparate from the total percentage of African Americans in Medina County, Nixon has failed to satisfy the second prong showing there was an underrepresentation of African Americans in his venire panel.

Because Nixon has failed to satisfy the second prong of the *Duren* test, we need not address whether Nixon satisfied the third prong, that is, whether he provided any evidence of a systematic

exclusion of African Americans from the pool of jurors summoned for his trial. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *Stepherson*, 693 S.W.3d at 383 (declining to address the second prong of the *Duren* test when appellant failed to meet the third prong of the test).

Accordingly, we overrule Nixon's fourth issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

Irene Rios, Justice

DO NOT PUBLISH